IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

| | |
|---|---|
| Timothy M. Cohane,             ) | |
|          ) | |
|      Plaintiff,      ) | |
|          ) | |
| v.              ) | Civil Action No. 1:14-cv-10494-RGS |
|          ) | |
| National Collegiate Athletic Association,   ) | |
| Thomas Hosty, David Price, Shepard Cooper,   ) | |
| and Does 1-50,         ) | |
|          ) | |
|      Defendants.      ) | |

---

## MEMORANDUM IN SUPPORT OF
## MOTION TO DISMISS

Defendants The National Collegiate Athletic Association ("NCAA"), Thomas Hosty, David Price, and Shepard Cooper (collectively, the "Individual Defendants"), submit the following Memorandum in support of their Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2), (3), and (6).

## INTRODUCTION AND BACKGROUND

The NCAA is a voluntary, unincorporated association of public and private colleges and universities located throughout the United States.  It is a private entity responsible for promulgating, interpreting, and enforcing bylaws in connection with NCAA membership and competition, including the conduct of member institutions and their athletic department personnel.  *See NCAA v. Tarkanian*, 488 U.S. 179 (1988).  The NCAA employs an enforcement staff whose charge includes investigating possible NCAA bylaw violations at member schools. Defendant David Price, a citizen of California, was the NCAA's Vice President of Enforcement

until his retirement in October 2010; Defendants Thomas Hosty and Shepard Cooper, both

citizens of Indiana, are current NCAA employees whose duties have included the investigation

and processing of alleged NCAA bylaw violations.

The NCAA Committee on Infractions ("COI") is a volunteer body of representatives

from member institutions and the general public charged with determining through procedures

adopted by the membership whether any NCAA bylaws have been violated in a given case.

Following an in-person hearing, the COI issues written findings and, where appropriate, imposes

penalties.  These findings and penalties may be appealed to the NCAA Infractions Appeals

Committee ("IAC").  Like the COI, the IAC is comprised of volunteers from member schools

and the general public.

### A.    Cohane's NCAA Administrative Proceedings

From 1993 until 1999, Plaintiff Timothy Cohane was the head coach of men's basketball

at the State University of New York at Buffalo ("UB"), a NCAA member institution competing

in the Mid-American Conference ("MAC").  Compl. ¶¶ 10-12.  In the fall of 1999, the MAC

began an investigation into possible violations of NCAA bylaws at UB.  *Id*. ¶ 13.  On December

3, 1999, with the MAC investigation still underway, Cohane resigned his position at UB in

exchange for $265,000, and signed a release.  Following a hearing in January 2000, the MAC

Committee on Infractions issued a report finding that Cohane and UB violated various NCAA

bylaws.

The NCAA began its own investigation in the spring of 2000.  Defendant Hosty was one

of two NCAA enforcement staff members involved in this investigation.  The enforcement staff

found possible NCAA bylaw violations by UB and Cohane, who were notified of the allegations

and of their right to appear before the COI.  The COI held a full-day in-person hearing in Tampa,

Florida, where Cohane appeared and was represented by counsel. *See* Compl. ¶ 14. On March 21, 2001, the COI issued its report, concluding that Cohane had violated NCAA rules, including rules governing ethical conduct. *Id.* ¶ 14. The COI also entered a "show cause" penalty that imposed requirements on member schools seeking to hire Cohane. *Id.* Cohane appealed the decision to the IAC, which held a one-day hearing in Boston, Massachusetts on August 22, 2001. *Id.* ¶ 15. Cohane and the Individual Defendants were among those in attendance. *Id.* ¶ 16. On October 12, 2001, the IAC issued a decision upholding the rules violations, but overturning the show-cause penalty. *See id.* ¶ 20.

### B.    Cohane's Parallel Federal Complaints

Despite releasing UB and successfully appealing the show cause penalty, in 2003 Cohane sued UB officials, the MAC, and the former MAC investigator. *See Cohane v. Greiner*, 04-CV-00943 (E.D.N.Y.) ("*Greiner*").[1] In *Greiner*, Cohane claims that during the NCAA infractions proceedings, UB and MAC officials attempted to frame him for NCAA violations by intentionally withholding exculpatory evidence, coercing witnesses, and lying to the NCAA COI. This, Cohane alleges, caused the COI to issue a March 21, 2001, report "wrongfully label[ing] him] unethical." *See* Compl. ¶ 14; *Greiner* First Amended Complaint ¶¶ 150-153. These allegedly false statements "struck to [sic] the very heart of plaintiff's professional competence and drastically impaired [his] chance of every receiving a head coaching position." *Greiner* First

---

[1] A copy of the First Amended Complaint in *Greiner* is attached hereto as Exhibit A. Defendants note that, for purposes of motions to dismiss brought under Rule 12(b)(2) and (3), the court may consider matters outside the pleadings without converting the motion into one for summary judgment. *See C.W. Downer & Co. v. Bioriginal Food & Sci. Corp.*, 2014 WL 815189 (D. Mass. 2014) ("On a motion to dismiss for personal jurisdiction…the court will look to the facts alleged in the pleadings and the parties' supplemental filings, including affidavits"); *see also Diaz Aviation Corp. v. Puerto Rico Ports Auth.*,   No. 09–158, 2010 WL 2991251, at *3 (D.P.R. July 27, 2010), *aff'd*, 716 F.3d 256 (1st Cir. 2013). The court may also take judicial note of the parties' pleadings and court filings in the Western District of New York litigation. *See, e.g.*, *Giragosian v. Ryan*, 547 F.3d 59, 66 (1st Cir. 2008).

Amended Complaint ¶ 160.  Because Cohane alleged defamatory statements by UB officials

(state employees), *Greiner* was brought pursuant to 42 U.S.C. § 1983 as what is commonly

referred to as a "stigma-plus" claim.

In 2004, Cohane went to court again, filing suit against the NCAA, NCAA enforcement

staff members Hosty and Stephanie Hannah, as well as the COI Chair.  *See Cohane v. NCAA*,

No. 04-CV-0181 (W.D.N.Y.) ("*Cohane I*") (attached as Exhibit B (Complaint and Jury Demand

filed on 3/19/2004)).  *Cohane I* also turns on allegations that defamatory statements in the COI

Report damaged his professional reputation and ruined his career.  Like *Greiner*, *Cohane I* is a

stigma-plus action under the theory the NCAA, Hosty, and others "acted under color of state

law" by conspiring with the *Greiner* defendants to deny him a fair hearing in the NCAA

infraction process.  *Cohane I* Compl. ¶¶ 36-38, 48-51.  *Cohane I* again maintains that the

defendants "through March 21, 2001 and continuing, voluntarily, publicly and falsely accuse

[sic] plaintiff of misconduct and stigmatized him by declaring plaintiff guilty of 'violating

principles of ethical conduct' and other serious charges in the course of his employment at [UB] .

. . .").  *Cohane I* Compl. ¶ 52.  Finally, *Cohane I* alleges the same "drastic impairment" to

Cohane's career prospects pled in *Greiner*.  *Id*. ¶ 54.

In the years following, the parties engaged in extensive discovery and motion practice in

both cases.  Cohane deposed several dozen witnesses (sometimes twice[2]) not just in New York,

but in locations scattered about the country, including but not limited to California, Montana,

Colorado, Wyoming, Oklahoma, Tennessee, Georgia, Virginia, Michigan, Indiana and, in one

instance, Boston, Massachusetts.  In the spring of 2012, *Greiner* and *Cohane I* were consolidated

---

[2] For example, Individual Defendants Hosty and Price have each been deposed by
Plaintiff on *three* occasions in *Greiner* and *Cohane I*.  *See* Plaintiff's Opposition to Defendants'
Motion for Summary Judgment, Decl. of Sean O'Leary, *Cohane I*, No. 04-CV-0181, Dkt. No.
127 (Feb. 27, 2013).

and referred to Magistrate Judge Kenneth Schroeder of the Western District of New York.  After

extensive briefing, on August 8, 2013, the Magistrate Judge issued a carefully-reasoned 128-

page Report and Recommendation recommending that the district court grant summary judgment

in favor of all Defendants.  Report, Recommendation and Order, *Cohane I*, No. 04-cv-00181

(W.D.N.Y. Aug. 8, 2013) (attached as Exhibit C).

###### C.     Cohane's Massachusetts Complaint

The Complaint in this case was filed in Suffolk Superior Court of the Commonwealth of

Massachusetts on October 24, 2013, asserting claims for defamation, intentional interference

with advantageous relations and negligence.  The complaint alleges that the March 21, 2001,

COI Report "wrongfully labeled [him] unethical" and seeks compensatory damages in the

amount of $25,000,000 for the "loss of [his] career" as a NCAA Division I head basketball

coach.  Compl. ¶ 14, 37.  Defendants timely removed the case to this Court on March 4, 2014.

### ARGUMENT

Cohane's Complaint makes no reference to the ongoing parallel litigation in the Western

District of New York, in which a United States Magistrate Judge rejected Cohane's attempt to

recover for the same reputational injury on the same core set of facts, which Defendants will

argue bars any relief in this action.[3]  But this court need not reach the merits of Cohane's

duplicative Complaint at all, because Massachusetts is clearly an improper forum in which to

adjudicate these disputes against these defendants.  None of the parties, including Cohane, work

or reside in Massachusetts.  Indeed, the Complaint fails to allege that Hosty, Cooper, or Price

have *any* contacts with the Commonwealth of Massachusetts at all, save their attendance at

---

[3] Should the district court adopt the magistrate's recommendation, the judgment is final for purposes of *res judicata* and this action would be barred by collateral estoppel.  *See TurboCare Div. of Demag Delaval Turbomachinery Corp. v. General Elec. Co.*, 938 F. Supp. 83, 84-85 (D. Mass. 1996).

Cohane's IAC hearing on a single day in 2001 in Boston.  That lone occurrence does not demonstrate Massachusetts contacts, much less the nexus required for personal jurisdiction consistent with due process.  The only even arguable link between the allegations in the Complaint and this forum is the allegation that Cohane was in Boston in 2010 when a former member of the IAC gave him a copy of a NCAA memorandum from 2006 containing a passing reference to his 2001 infractions case.  Compl. ¶¶ 21-24.[4]  This single allegation is insufficient to establish venue in the Commonwealth of Massachusetts, and when coupled with Cohane's continued prosecution of duplicative claims in the Western District of New York, makes it difficult to discern a good faith basis for ever selecting this venue.

These defects in the Complaint warrant dismissal of all claims against the Individual Defendants for lack of personal jurisdiction and dismissal of the Complaint outright for improper venue.  The claims against the NCAA should also be dismissed for failure to state a claim because as an unincorporated association, the NCAA lacks the capacity to sue or be sued under settled Massachusetts law.

## I.    THE INDIVIDUAL DEFENDANTS ARE NOT SUBJECT TO PERSONAL JURISDICTION IN MASSACHUSETTS

---

[4] A copy of the Memorandum is attached as Exhibit D.  This 10-page Memorandum from the COI to the IAC discusses proposals to amend the NCAA appeals process, including whether parties should be allowed to present new information on appeal.  The Memorandum outlines the COI's opposition to the proposal, citing Cohane's case (among others) as an example of why this was problematic.  *Id.* p. 3  ("Cohane…[was] allowed to present an abundance of new 'evidence' some of which was clearly false, as pointed out by the enforcement staff following the hearing.").  *See Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993) (courts may look to documents "not expressly incorporated [in the complaint]" in circumstances where "documents [are] central to plaintiffs' claim"); *Blay v. Zipcar, Inc.*, 716 F. Supp. 2d 115, 118 (D. Mass. 2010) (noting that the court may consider on a motion to dismiss "extrinsic documents" that are "central to plaintiff's claims" and finding that defendant properly attached a document detailing its standard operating procedures that was not attached to the complaint because plaintiff made "various characterizations about [defendant's] policies central to his complaint").

The plaintiff bears the burden of showing "the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the Constitution" to demonstrate personal jurisdiction over a non-resident defendant. *See Negrón–Torres v. Verizon Commc'ns, Inc*., 478 F.3d 19, 24 (1st Cir. 2007) (quoting *U.S. v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 618 (1st Cir. 2001)). A *prima facie* showing of personal jurisdiction requires the plaintiff to "go beyond the pleadings and make affirmative proof." *Chlebda v. H.E. Fortna & Bro., Inc*., 609 F.2d 1022, 1024 (1st Cir. 1979). Put differently, the plaintiff "may not rely on unsupported allegations in [his] pleadings, but [is] obliged to adduce evidence of specific facts." *Platten v. HG Bermuda Exempted Ltd*., 437 F.3d 118, 134 (1st Cir. 2006) (internal quotations and citations omitted).

"[I]n diversity cases . . . the district court's personal jurisdiction over a nonresident defendant is governed by the forum's long-arm statute." *Sawtelle v. Farrell*, 70 F.3d 1381, 1387 (1st Cir. 1995) (internal quotations and citations omitted). Where, as in Massachusetts, the long-arm statute is coextensive with the constitutional limits of due process, the two inquiries become one, focusing solely on whether the exercise of jurisdiction comports with due process. *Id*.; *see also Automatic Sprinkler Corp. of Am. v. Seneca Foods Corp*., 361 Mass. 441, 442, 280 N.E.2d 423, 424 (Mass. 1972).

To satisfy due process, the plaintiff must show "certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U. S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U. S. 457, 463 (1940)). Courts have recognized two types of personal jurisdiction: general or specific. "General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and

systematic activity, unrelated to the suit, in the forum state." *United Elec., Radio & Mach. Workers v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1088 (1st Cir. 1992) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-416 n. 9 (1984)). "Specific jurisdiction exists when there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities, such as when the litigation itself is founded directly on those activities." *Massachusetts Sch. of Law at Andover, Inc. v. American Bar Ass'n*, 142 F.3d 26, 34 (1st Cir. 1998).

Critical to both general and specific jurisdiction is the existence of "minimum contacts" between the nonresident defendant and the forum. *Id.* This inquiry "focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984) (quoting *Shaffer v. Heitner*, 433 U. S. 186, 204 (1977)). The "relationship must arise out of contacts that the "'defendant *himself*' creates with the forum State." *Walden v. Fiore*, 571 U. S. ____, 134 S. Ct. 1115, 1122 (2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U. S. 462, 475 (1985)). In other words, due process limits on the State's adjudicative authority exist to protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties. *See World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-292 (1980).

### A.    There Is No General Jurisdiction Over The Individual Defendants

Although the Complaint could arguably be construed as alleging (albeit in conclusory fashion) that the NCAA is subject to general jurisdiction in the Commonwealth of Massachusetts (*see* Compl. ¶ 5), the Individual Defendants cannot be subject to personal jurisdiction merely because they were or are employees of the NCAA.[5] As the Supreme Court has stated,

---

[5] As discussed *infra*, the Court need not resolve whether the Complaint alleges facts sufficient to demonstrate general jurisdiction over the NCAA because there can be no viable claim against the NCAA under Massachusetts law.

"jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him." *Keeton*, 465 U.S. at 781 n.13. Rather, "[e]ach defendant's contacts with the forum State must be assessed individually." *Calder v. Jones*, 465 U.S. 783, 790 (1984). "The question of personal jurisdiction over an individual, therefore, rests on whether there is an independent basis for jurisdiction based on an individual's actions, regardless of the capacity in which those actions were taken." *Rissman Hendricks & Oliverio, LLP v. MIV Therapeutics Inc.*, 901 F. Supp. 2d 255, 263 (D. Mass. 2012).

The Complaint does not allege that the Individual Defendants engaged in "continuous and systematic activity" in Massachusetts, nor does it plead a single fact that could conceivably support that finding.  Nor is it likely that it could it in light of the fact that the Individual Defendants reside and work in California and Indiana.  Accordingly, if this Court can exercise personal jurisdiction over the Individual Defendants, it can only do so through specific jurisdiction. *See Mass. Sch. of Law*, 142 F.3d at 34.

## B.      There Is No Specific Jurisdiction Over The Individual Defendants

The exercise of personal jurisdiction under a theory of specific jurisdiction requires the plaintiff to show three elements:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the *Gestalt* factors, be reasonable.

*United Elec. Workers*, 960 F.2d at 1089 (citation omitted); s*ee also Phillips Exeter Acad. v. Howard Phillips Fund, Inc*., 196 F.3d 284, 288 (1st Cir. 1999).  In the present case, Cohane has not pled and cannot show even one of these three predicate elements.

### 1.      The Individual Defendants have no Massachusetts contacts

The element of relatedness requires the plaintiff to produce evidence showing that "the cause of action either arises directly out of, or is related to, the defendant's forum-based contacts." *Harlow v. Children's Hosp.*, 432 F.3d 50, 60-61 (1st Cir. 2005).  In other words, the plaintiff must establish that his "injury would not have occurred '*but for*' [the defendant's]" contact with Massachusetts, and that this contact created his "cause of action."  *Mass. Sch. of Law*, 142 F.3d at 35; *see also Interface Grp.-Massachusetts, LLC v. Rosen*, 256 F. Supp. 2d 103, 107-08 (D. Mass. 2003) (dismissing tortious interference claim for lack of personal jurisdiction because defendants half dozen business trips and multiple phone calls into Massachusetts were not the 'but for' cause of the alleged harm).

The Complaint alleges only one forum activity by the Individual Defendants—their presence in Boston for the IAC hearing in 2001.  Compl. ¶¶ 16, 18.  This isolated contact—in addition to being well outside the statute of limitations—bears no relation to Cohane's claims, which rest on the republication of allegedly slanderous remarks in the 2006 COI Memorandum.  Compl. ¶ 21.

In *Massachusetts School of Law*, the First Circuit held that similar contacts were necessarily too attenuated to show "relatedness" to the plaintiff's claims.  142 F.3d 26.  In that case, after being denied accreditation, the plaintiff law school sued the American Bar Association and other entities and individuals, including individual members of the ABA Accreditation Committee.  The school alleged that, among other things, it was defamed during the accreditation review and that individual committee members conspired to ensure its application would be denied.  *Id*. at 30.

The Committee members' activities in Massachusetts were limited to attending one meeting in Boston and a retreat on Nantucket. *Id.* at 32-33. The court concluded that the Boston meeting affected plaintiff only in a "peripheral sense" and could not plausibly be said to have given rise to the plaintiff's claims, and that the Nantucket retreat did not represent a related contact because the committee "did not take up any agenda item concerning [the plaintiff law school's]" case for accreditation. *Id.* at 34–35. The court also concluded that two letters written outside of Massachusetts and sent to the plaintiff in Massachusetts in connection with the accreditation process were too attenuated to create jurisdiction in Massachusetts. *Id.*

The level of contact the First Circuit found insufficient in *Mass. School of Law* is far greater than the single contact alleged against the Individual Defendants in the Complaint here. While the ABA committee members actually traveled to Massachusetts and acted in at least some capacity on plaintiff's applications, here Cohane does not allege that the Individual Defendants engaged in any forum activities that relate to his claims. Instead, he relies nearly exclusively on the 2006 Memorandum obtained from a third-party following a deposition that happened to occur in Boston and that he happened to attend. This allegation is immaterial to showing the Individual Defendants' contacts with Massachusetts.

For example, the Memorandum states that it was prepared by the COI, not the Individual Defendants, and there is no evidence that the Individual Defendants were even aware that the Memorandum existed. Nor is there any indication the Memorandum was directed at Massachusetts, regardless of who prepared it. Rather, it concerns only discussion of internal NCAA infractions procedures, mentioning Cohane's dated infractions case in passing and paraphrasing a statement of opinion by NCAA enforcement staff without specific attribution. In short, the Memorandum is far more attenuated than the correspondence found wanting in

*Massachusetts School of Law*, and the same conclusion follows here. *See also Helicopteros*, 466

U. S. at 417 ("[The] unilateral activity of another party or a third person is not an appropriate

consideration when determining whether a defendant has sufficient contacts with a forum State

to justify an assertion of jurisdiction.").

> **2.**   **Cohane cannot show that the Individual Defendants have "purposefully availed" themselves of the privilege of doing business in Massachusetts**

To establish that a defendant has purposefully availed himself of the forum, a plaintiff

must show "(1) that it felt the injurious effects of a defendant's tortious act in the forum, and (2)

that the defendant's act was calculated to cause injury to the plaintiff there." *Swiss Am. Bank,*

*Ltd*, 274 F.3d at 632–33 (internal quotations and citations omitted) (articulating two-part test

under *Calder v. Jones*, 465 U.S. 783 ( 1984)).  In other words, the defendant's non-forum

activities must be "expressly aimed" at the forum State before the non-resident defendant can be

"reasonably [expected to be] haled into court [there]." *Farquharson v. Metz*, No. 13-10200,

2013 WL 3968018, at *2 (D. Mass. July 30, 2013) (citation omitted).

Here, even if the Memorandum (which the Individual Defendants did not write)

contained intentionally libelous statements about Cohane, its author would not be subject to

personal jurisdiction unless there is evidence of "additional steps [taken] to specifically aim

content at any Massachusetts residents." *Id.* (allegedly defamatory online comments concerning

Massachusetts resident held insufficient to show purposeful availment where not specifically

targeted at the forum); *see also id.* (noting that the defendant "did nothing to incite residents of

Massachusetts—as opposed to the world at large—to take up arms against [the plaintiff] whose

principal place of business was in Massachusetts and who would reasonably be expected to

suffer injury in Massachusetts") (citing *BroadVoice, Inc. v. TP Innovations LLC*, 733 F. Supp. 2d 219, 226 (D. Mass. 2010)).

More importantly, the Complaint does not allege that Cohane suffered an injury in Massachusetts, but instead contends that the damage to his reputation is "nationwide." Compl. ¶ 34. It would be absurd to conclude there is personal jurisdiction over a defendant based his on extra-forum activities where, as here, the plaintiff is non-resident of Massachusetts who sustained no injury in that forum as the result of alleged slanderous content not targeted at Massachusetts. *See Swiss Bank*, 274 F.3d at 623 (citing *Mass. Sch. of Law*, 142 F.3d at 36).

### 3. No reasonable basis exists for exercising personal jurisdiction over the Individual Defendants

Even if minimum contacts do exist—which they do not here—a court may only exercise personal jurisdiction if it deems it reasonable in light of five factors: (1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies. *See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 52 (1st Cir. 2002).

The NCAA and the Individual Defendants have been dragged across the country defending these same claims in the decade of parallel federal litigation in New York. Requiring them to travel to yet another forum imposes an obvious, additional burden that cannot be justified where none of the parties reside in Massachusetts and the Commonwealth has no discernable interest in the subject matter or outcome of the case. Under far less extreme facts, courts have concluded that it would be unreasonable to exercise jurisdiction. *See, e.g.*, *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 30 (1st Cir. 2008) ("Second, while we normally give deference to

13

the plaintiff's choice of forum, as the plaintiff no longer lives in Massachusetts, it is hard to see why it would be less burdensome for him to appear in Illinois than in Massachusetts, save that he has retained a Massachusetts lawyer.  In addition, efficient administration of justice can easily be accomplished in Illinois, where the plaintiff has already asserted his claims as counterclaims in the civil action that is currently proceeding against him.") (citation omitted).

## II.   THE COMPLAINT SHOULD BE DISMISSED AS TO ALL DEFENDANTS FOR IMPROPER VENUE

The same failure to plead facts demonstrating that the Individual Defendants have any legitimate connection to Massachusetts demonstrates that the Complaint should be dismissed in the alternative for improper venue pursuant to Fed. R. Civ. P. 12(b)(3).  As with personal jurisdiction, Cohane also bears the burden of showing he has brought this action in an appropriate venue.  *See Gabriel v. Albany Coll. of Pharmacy & Health Scis.*, No. 11-11547, 2011 WL 6936482, at *1 (D. Mass. Jan. 3, 2011) (citing *Cordis Corp. v. Cardiac Pacemakers*, 599 F.2d 1085, 1086 (1st Cir. 1979)).

Venue in a diversity case is proper only in "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b).

It is undisputed that none of the parties reside in Massachusetts, thus venue cannot be established under 28 U.S.C. § 1391(b)(1).  Nor can venue rest on 28 U.S.C. § 1391(b)(2). In determining where a substantial part of the events occurred, courts look "not to a single

14

triggering event prompting the action, but to the entire sequence of events underlying the claim." *Astro–Med v. Nihon Kohden of America*, 591 F.3d 1, 12 (1st Cir. 2009). Review of the Complaint in *Cohane I*, moreover, as well as the instant Complaint, shows that the "events giving rise" to the allegations in the Complaint arose during the course of Cohane's infractions case in New York. Indeed, only two paragraphs in the Complaint reference events alleged to have even occurred in Massachusetts. Compl. ¶¶ 23-24. This is insufficient to satisfy the requirement that an event or omission must be "substantial" to confer venue in the district where that event occurred. *See Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, 42-43 (1st Cir. 2001) ("substantiality requirement provides the venue statute with a limiting principle") (citing *Cottman Transmission Sys. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994)). In other words, for many of the same reasons that personal jurisdiction is lacking, venue is improper in this district under §1392(b)(2). *See Rooney v. Walt Disney World Co.*, No. 02-12433, 2003 WL 22937728, *6 (Nov. 25, 2003) (noting similarity between personal jurisdiction and venue analyses).

As the history of parallel litigation make clear, at least one other district offers a proper venue for adjudicating the allegations of the Complaint—the Western District of New York. Because this action could have been brought in another district, the fallback provision of § 1391(b)(3) does not apply. *See* 14D Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 3806.2 (3d ed. 2002) ("[T]he general venue statute contains a fallback provision that can be used when, and only when, there is no district in which a case otherwise could be brought in accordance with the venue statutes."); *Uffner*, 244 F.3d at 42 n. 4 ("We turn to the third alternative only in the event that the first two provisions fail to provide an appropriate forum.").

Upon determining that personal jurisdiction is lacking or that venue is improper, the court may dismiss the case or transfer the action to another district upon a finding that transfer is "in the interest of justice." *Pedzewick v. Foe*, 963 F. Supp. 48, 50-51 (D. Mass. 1997). Transfer will be denied in cases where, as here, there is no good faith basis for personal jurisdiction over the defendants in the improper venue . *Id.* at 51 ("[T]his Court concludes that transfer in this case would result in an abuse of the judicial system. The transfer statutes were not intended to give plaintiffs an end run around the rules of personal jurisdiction and venue, but rather were intended to facilitate fairness and result in greater convenience to litigants."); *see also In re Pickeral*, 267 B.R. 1, 5 (Bankr. D. Col. 2001) ("[E]ven when a complaint is not deliberately filed in the wrong venue, a district court nevertheless need not transfer a civil action filed in a district in which the court lacked personal jurisdiction over the defendant if the misfiling resulted from a mistake based on a lack of diligence, and this is so even if the statute of limitations would bar refiling in the proper court.").

Under the circumstances, the appropriate remedy is to dismiss the Complaint outright.

## III.     THE CLAIMS AGAINST THE NCAA MUST BE DISMISSED BECAUSE UNINCORPORATED ASSOCIATIONS LACK THE CAPACITY TO BE SUE OR BE SUED UNDER MASSACHUSETTS LAW

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The district court must "accept as true all well-pleaded facts set forth in the complaint and draw all reasonable inferences therefrom in the pleader's favor." *Haley v. City of Boston*, 657 F.3d 39, 46

(1st Cir. 2011) (citation omitted).  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

It is undisputed that the NCAA is "an unincorporated voluntary association."  Compl. ¶ 5. Although Fed. R. Civ. P. 17(b)(1) allows unincorporated associations such as the NCAA to be sued in their own names for purposes of enforcing a federal right, this provision does not govern the question of capacity under state law.  In the Commonwealth of Massachusetts, unincorporated associations are regarded as an aggregate of their members and lack the capacity to sue or to be sued in their own name.  *See Sea Pines Condominium III Ass'n v. Steffens*, 61 Mass. App. 838, 842, 814 N.E.2d 752, 757 (2004) (quoting *Belson v. Thayer & Assocs.*, 32 Mass. App. Ct. 256, 256 n. 1, 588 N.E.2d 695 (1992) ("As a general rule, unincorporated associations lack the capacity to sue and be sued.")); *Wigwam Associates, Inc. v. McBride*, 1995 WL 1146161, at *8 (Mass. Super. Oct. 13, 1995) (quoting *McCormack v. Labor Relations Comm'n*, 358 Mass. 682, 685, 266 N.E.2d 651 (1971) ("An unincorporated voluntary association is not a separate entity and cannot be made a party defendant.").  This common law rule is well-settled, with limited exceptions not applicable here.[6]

Put simply, the NCAA lacks the capacity to be sued under longstanding principles of Massachusetts law.  In jurisdictions following a similar rule, courts have not hesitated to dismiss the NCAA as a defendant on this basis.  *See Bleid Sports, LLC v. National Collegiate Athletic Ass'n*, No. 12-374, --- F.Supp.2d ---, 2013 WL 5410988, at *5 (E.D. Ky. Sept. 26, 2013)

---

[6] The General Assembly enacted a statutory exception to this common law rule allowing unincorporated condominium associations to sue or be sued (M.G.L. c. 183A § 10(b)(4)), which is of course inapplicable here.  The narrow judicial exception to this common law rule created for labor unions is similarly inapposite here.  *See Diluzio v. United Elec. Radio Mach. Workers of Am., Local 274*, 386 Mass. 314, 435 N.E.2d 1027 (1982).

(applying Kentucky law); *Adidas America v. NCAA*, No. 98-2510, 64 F. Supp. 2d. 1097 (D. Kan 1999) (applying Kansas law).  Accordingly, the claims against the NCAA fail as a matter of law and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## CONCLUSION

For the foregoing reasons, Defendants request that the Court enter an order dismissing the Complaint with prejudice for lack of personal jurisdiction over the Individual Defendants, for improper venue as to all Defendants, and for failure to state a claim against the NCAA. Defendants further request that the Court schedule their Motion for oral argument.

Respectfully submitted this eleventh day of March, 2014.

NATIONAL COLLEGIATE ATHLETIC
ASSOCIATION, THOMAS HOSTY,
DAVID PRICE, AND SHEPARD COOPER

By their attorneys,

/s/ Felicia H. Ellsworth
Felicia H. Ellsworth (BBO No. 665232)
Joshua C. Sharp (BBO No. 681439)
WILMER CUTLER PICKERING HALE
AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000
felicia.ellsworth@wilmerhale.com
joshua.sharp@wilmerhale.com


William C. Oddle*
SPENCER FANE BRITT & BROWNE
1000 Walnut Street
Suite 1400
Kansas City, MO 64106
Telephone: (816) 292-8273
wodle@spencerfane.com
*pro hac vice admission pending

## **CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing was served upon the pro se plaintiff by Federal Express on March 11, 2014.

/s/ Joshua C. Sharp
Joshua C. Sharp