UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 14-10494-RGS

TIMOTHY M. COHANE

v.

NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, THOMAS HOSTY,
DAVID PRICE, SHEPARD COOPER, and DOES 1-50

MEMORANDUM AND ORDER ON
DEFENDANTS' MOTION TO DISMISS

May 8, 2014

STEARNS, D.J.

This diversity action is the latest chapter in a long-running dispute between Timothy Cohane and the National Collegiate Athletic Association (NCAA) over the circumstances of his 1999 departure as head coach of the men's basketball team at State University of New York at Buffalo (SUNY).[1] In 2000, the NCAA Committee on Infractions (COI) found that Cohane had violated various NCAA recruiting rules while coaching at SUNY. Cohane alleges that in August of 2001, after a hearing before the NCAA Infractions

---

[1] In 2003 and 2004, Cohane sued various officers of SUNY Buffalo and the NCAA in the United States District Courts for the Eastern and Western Districts of New York over the loss of his position. *See Cohane v. Greiner*, 04-CV-00943 (E.D.N.Y), and *Cohane v. NCAA*, No. 04-CV-0181 (W.D.N.Y.). The two cases were consolidated and decided in March of 2014, when defendants' motions for summary judgment were granted. *See Cohane v. NCAA*, 2014 WL 1279151 (W.D.N.Y. Mar. 27, 2014).

Appeal Committee (IAC) in Boston, the individual defendants represented to the IAC that Cohane had presented false evidence. These statements were later memorialized in a 2006 NCAA memorandum,[2] which was distributed to various university administrators. Cohane learned of these statements only in October of 2010, when he was provided a copy of the memorandum.

Cohane alleges that the statements and the memorandum impugned his integrity, harmed his reputation, and made it impossible for him to ever again be hired as a head coach in NCAA Division One basketball. He asserts four claims: defamation (slander) (Count I); defamation (libel) (Count II); intentional interference with advantageous relations (Count III); and negligence (Count IV). The NCAA moves, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the Complaint for failure to state a claim for which relief may be granted. The individual defendants move, pursuant to Fed. R. Civ. P. 12(b)(2), to dismiss the Complaint for lack of personal jurisdiction. Defendants also suggest that this case may be subject to a *res judicata* bar once the judgment in the New York cases becomes final.

---

[2] The memorandum set out the position of the COI on certain recommendations made to the IAC regarding improvements to be made in the NCAA administrative appeals process. Cohane's case was referenced as an example of an appeals hearing where new evidence, "some of which was clearly false," was offered and received. Defs.' Ex. D at 3.

*Claims as to the NCAA*

The NCAA contends that as an unincorporated association, it cannot be party to a lawsuit in Massachusetts.[3] *See Save the Bay, Inc. v. Dep't of Pub. Utilities*, 366 Mass. 667, 675 (1975). Although the court previously relied on this reasoning in denying Cohane's motion to remand the case to the state court, upon reconsideration, the court believes that rationale of *Diluzio v. United Elec., Radio & Mach. Workers of Am., Local 274*, 386 Mass. 314 (1982), extends to the NCAA.

In *Diluzio*, the Supreme Judicial Court (SJC) held that unincorporated labor unions were legal entities capable of being sued in their own name.

> Structurally and functionally, a labor union is an institution which involves more than the private or personal interests of its members. It represents organized, institutional activity as contrasted with wholly individual activity. This difference is as well defined as that existing between individual members of the union. The union's existence in fact, and for some purposes in law, is as perpetual as that of any corporation, not being dependent upon the life of any member. It normally operates under its own constitution, rules and by-laws which, in controversies between member and union, are often enforced by the courts. The union engages in a multitude of business and

---

[3] The NCAA does not challenge the Complaint on personal jurisdiction grounds, and concedes that "the Complaint could be arguably construed as alleging . . . that the NCAA is subject to general jurisdiction in the Commonwealth of Massachusetts." Defs.' Mem., Dkt. # 9 at 8.

other official concerted activities, none of which can be said to
be the private undertakings of the members.

*Id.* at 316, quoting *United States v. White*, 322 U.S. 694, 701-702 (1944).

Thus,

[i]t would be unfortunate if an organization with as great power
as (a labor union) has in the raising of large funds and in
directing the conduct of (its) members in carrying on, in a wide
territory, industrial controversies and strikes, out of which so
much unlawful injury to private rights is possible, could
assemble its assets to be used therein free from liability for
injuries by torts committed in course of such strikes.

*Diluzio*, 386 Mass at 318, quoting *United Mine Workers v. Coronado Coal
Co.*, 259 U.S. 344, 388-389 (1922). The SJC concluded that "our common
law rule that labor unions as unincorporated voluntary associations are not
legal entities for the purpose of suing or being sued is [not] suited to present
conditions." *Diluzio*, 386 Mass. at 314.

Although the SJC limited its holding to unincorporated labor unions
and left open the status of other unincorporated associations, *Diluzio*, 386
Mass. at 319 n.6, the rationale of *Diluzio* has since been extended to include
unincorporated associations that operate independently from its members.
In *Northbrook Excess & Surplus Ins. Co. v. Med. Malpractice Joint
Underwriting Ass'n of Massachusetts*, 900 F.2d 476 (1st Cir. 1990), the

Court found that Medical Malpractice Joint Underwriting Association (JUA) was a jural entity despite its unincorporated status. *Id.* at 479-480.

> We think that the [*Diluzio*] court's rationale is applicable in this case. As an involuntary association created by legislative mandate, the JUA differs significantly from the aggregations of individuals pursuing a common purpose contemplated by the old common law rule. It is a non-profit underwriting association which issues policies in its own name and divides fixed profits among its members according to an established formula. Its existence is not dependent on the life of any member but is at the prerogative of the legislature. It engages in general malpractice underwriting work which represents organized, institutional activity as contrasted with wholly individual activity. The JUA, like the labor union under consideration in *Diluzio,* shares many of the institutional characteristics of incorporated entities which have jural status.

*Id.* at 480 (quotation marks and citations omitted).

The NCAA also "shares many of the institutional characteristics of incorporated entities which have jural status." *Id.* It is a national organization whose members "includ[e] virtually all public and private universities and 4-year colleges conducting major athletic programs in the United States." *NCAA v. Tarkanian*, 488 U.S. 179, 183 (1988). It promulgates and enforces rules "governing the conduct of the intercollegiate athletic programs of its members." *Id.*

The NCAA's bylaws provide that its enforcement program shall be administered by a Committee on Infractions. The Committee supervises an investigative staff, makes factual determinations concerning alleged rule violations, and is expressly authorized to "impose appropriate penalties on a member found to be in violation, or recommend to the Council suspension or termination of membership." In particular, the Committee may order a member institution to show cause why that member should not suffer further penalties unless it imposes a prescribed discipline on an employee . . . . The bylaws also provide that representatives of member institutions "are expected to cooperate fully" with the administration of the enforcement program.

*Id.* at 183-84 (citations omitted). As the national governing body for collegiate athletics, the NCAA is also

an institution which involves more than the private or personal interests of its members. It represents organized, institutional activity as contrasted with wholly individual activity. . . . The [NCAA's] existence . . . is as perpetual as that of any corporation, not being dependent upon the life of any member. It normally operates under its own constitution, rules and by-laws . . . [and] engages in a multitude of business and other official concerted activities, none of which can be said to be the private undertakings of the members.

*Diluzio*, 386 Mass. at 316. It would similarly be "unfortunate if an organization with as great power as [the NCAA] has in . . . in directing the conduct of (its) members . . . could assemble its assets to be used therein free from liability for injuries by torts committed in course of [its activities]." *Id.* at 318.[4]

---

[4] Although the court now finds that the NCAA is properly joined as a defendant in this case, the outcome of Cohane's motion to remand to state

*Claims as to the Individual Defendants*

Cohane contends that this court has specific personal jurisdiction over Thomas Hosty, David Price, and Shepard Cooper because they were present in Boston in August of 2001 when they made the allegedly defamatory statements to the IAC. To invoke specific personal jurisdiction, Cohane must allege sufficient facts to pass a tripartite test.[5]

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the *Gestalt* factors, be reasonable.

*United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1089 (1st Cir. 1992).

---

court remains unchanged. For diversity purposes, "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10). Cohane's Complaint identifies the national office of the NCAA as being in Indianapolis, Indiana, which does not disturb the complete diversity of the parties, as Cohane is a resident of Rhode Island.

[5] To exercise jurisdiction over non-resident defendants in a diversity action, the court "must find contacts that, in the aggregate, satisfy the requirements of both the forum state's long-arm statute and the Fourteenth Amendment." *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 204 (1st Cir. 1994). The Massachusetts Long-Arm Statute is coextensive with the constitutional limits of due process, *'Automatic' Sprinkler Corp. of Am. v. Seneca Foods Corp.*, 361 Mass. 441, 443 (1972), and the two inquiries collapse into one of due process.

Cohane's assertion of personal jurisdiction fails because his allegations do not support a finding that the individual defendants "purposefully avail[ed themselves] of the privilege of conducting activities in [Massachusetts]." *Id.* The "purposeful availment" "prong is only satisfied when the defendant purposefully and voluntarily directs his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on these contacts." *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 624 (1st Cir. 2001).

In the context of a defamation claim, "purposeful availment" is determined by where the effects of the defamatory statements are intended to be felt. *Calder v. Jones*, 465 U.S. 783, 788-790 (1984); *see also Noonan v. Winston Co.*, 135 F.3d 85, 90 (1st Cir. 1998) (acknowledging that in *Calder*, "the Supreme Court adopted an effects test for determining purposeful availment in the context of defamation cases"). In *Calder*, Shirley Jones brought suit for libel, inter alia, in California state court against Iain Calder and John South, two Florida reporters who authored and edited an article about Jones in Florida that was published in a magazine with national circulation. The Supreme Court found that the

California courts could exercise personal jurisdiction over the reporters because

> [t]he allegedly libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California sources, and the brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California. In sum, California is the focal point both of the story and of the harm suffered. Jurisdiction over petitioners is therefore proper in California based on the "effects" of their Florida conduct in California.

*Id.* at 788-789. *See also Walden v. Fiore*, 134 S. Ct. 1115, 1121-1122, 1123-1124 (2014) ("For a State to exercise personal jurisdiction consistent with due process, the defendant's suit related conduct must create a substantial connection with the forum State[,]" and noting that "[t]he crux of *Calder* was that the reputation-based effects of the alleged libel connected the defendants to California, not just to the plaintiff.").

In contrast, Cohane does not allege that he felt the defamatory effects of the individual defendants' statements to the IAC or the memorandum in Massachusetts. Cohane is a resident of Rhode Island. If anywhere, the alleged harm to his reputation would be felt where he is a resident, rather than where the statements were made. Because the named individual defendants' alleged defamatory statements cannot be said to have been calculated to cause injury to Cohane in Massachusetts, a federal court

sitting in diversity cannot properly exercise personal jurisdiction over these defendants.

## ORDER

Defendants' motion to dismiss the Complaint is <u>ALLOWED IN PART</u> as to Hosty, Price, and Cooper for lack of personal jurisdiction, and <u>DENIED IN PART</u> as to the NCAA for failure to state a claim for which relief may be granted. The NCAA will have until June 9, 2014 to file any motions to dismiss the claims on substantive grounds.

SO ORDERED.

/s/ Richard G. Stearns

_____
UNITED STATES DISTRICT JUDGE